CA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RECEIVED

DEC 13 2010
Dec 13 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Danielle Holt                          )
_____        )
_____        )
_____        )
(Name of the plaintiff or plaintiffs)  )        10CV7917
                                       )        JUDGE MANNING
            v.                         )        MAG. JUDGE VALDEZ
                                       )
Loyola University of Chicago           )
_____        )
_____        )
_____        )
(Name of the defendant or defendants)  )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  This is an action for employment discrimination.

2.  The plaintiff is Danielle Holt _____ of the

county of Lake _____ in the state of IN _____.

3.  The defendant is Loyola University of Chicago _____, whose

street address is 820 N Michigan Avenue _____,

(city) Chicago _____ (county) Cook _____ (state) IL _____ (ZIP) 60611 _____

(Defendant's telephone number)    ( 312 ) – 915-6195 _____

4.  The plaintiff sought employment or was employed by the defendant at (street address)

    820 N Michigan Avenue _____ (city) Chicago _____

    (county) Cook _____ (state) IL _____ (ZIP code) 60611 _____

5. The plaintiff [*check one box*]

    (a) ☐    was denied employment by the defendant.

    (b) ☐    was hired and is still employed by the defendant.

    (c) ☒    was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month) June_____, (day) 6th_____, (year) 2008_____.

7.1   *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff  [*check*

    *one box*]  ☐ has *not*     filed a charge or charges against the defendant
           ☒ *has*

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

    (i)   ☒ the United States Equal Employment Opportunity Commission, on or about

        (month) April_____ (day) 21st_____ (year) 2009_____.

    (ii)  ☐ the Illinois Department of Human Rights, on or about

        (month)_____ (day)_____ (year)_____.

  (b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached.  ☒ YES.   ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

    defendant asserting the acts of discrimination indicated in this court complaint.

☐    Yes (month)_____ (day)_____ (year) _____

☐    No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ YES    ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not issued

a *Notice of Right to Sue.*

(b) ☒    the United States Equal Employment Opportunity Commission has issued a

*Notice of Right to Sue*, which was received by the plaintiff on

(month) September _____ (day) 16th _____ (year) 2010 _____ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a) ☐    Age (Age Discrimination Employment Act).

(b) ☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

See 2 in Addendum

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ YES ☒ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☒ Direct the defendant to hire the plaintiff.

(b) ☒ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): There is a new trending amongst higher educational institutions. When applying for jobs on University web sites, in order to be able to submit the application, you have

5

to agree to allow former employers to disclose any and all information about you and your history with them. I have

been unemployed for almost two years now. I am unaware of what Loyola is saying to other institutions of hiring

agencies when they contact Loyola to inquire about me. I am in need of a job and would like for Loyola not to say or

imply things that might pose a negative reflection about me to other prospective hiring angencies.

*I would not want any of my case on the news or in the paper or on the internet*

(g) **X**   If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) **X**   Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

*Danielle Holt*

(Plaintiff's name)

Danielle Holt

(Plaintiff's street address)

3838 Carey Street

(City) East Chicago          (State) IN          (ZIP) 46312

(Plaintiff's telephone number)  ( 219 ) – 678-9495

Date: December 12, 2010

6

# Addendum 1/2

1. Title VII of the Civil Rights Act of 1964. For the purpose of consistency this document is being created in third person by the plantiff. The plantiff was dismissed with a charge of plagiarism on a rough draft that was submitted via email. In June of 2008, the plantiff responded to an evaluation and given the supervisors response to her comments the plantiff believes her supervisor was not pleased. Between June and December the plaintiff, her supervisor and HR exchanged several communications regarding instances that according to the plantiff appeared to primarily be found or judged by HR in favor of the supervisor. In December the plantiff filed a formal complaint with HR against her supervisor, this complaint was dismissed by HR. With reference to the termination the plantiff states her supervisor holds a PhD in english and has worked with technology for numerous years, this implies that the supervisor was aware of the meanings of common knowledge and a rough draft, in addition to numerous aspects regarding technology. The plantiff notes, the name of the department is Learning Technologies and Assessment.There were times when the plaintiff states she was afraid of her supervisor and also times when she believed it was the intention of the supervisor to provoke the plaintiff into negatively reacting to comments.

   The plaintiff is unclear as to why HR overlooked her reportings of instances in favor of the supervisor. The plaintiff presented ample evidence to the HR department regarding the going on's between the supervisor and herself. The defendant's termination proceedings regarding the plaintiff's termination were very odd, e.g. email falsification and plagiarism were discussed prior to termination, HR insisted on the possibility of providing the plaintiff information obtained from the IT department, the plaintiff countered with information obtained from the email service provider-the information stated "emails can be changed and altered from a workstation"…it was a known fact that the plaintiff's supervisor was at the defendan'ts desk. The response from HR was to acknowledge that they were aware that such an instance could happen and questioned the plaintiff as to if the plantiff really believed the supervisor would do something like that. The plaintiff responded by saying yes.

2. On February 23, 2009, the plaintiff was terminated with a charge of plagiarism of common knowledge information that was submitted as a rough draft via email. Following a written appeal of the termination charge to Human Resources, the defendant disregarded evidence provided to them illustrating that the document created by the plaintiff was common knowledge and instead re-introduced a previous alleged concerned regarding the falsification of an email which had been discussed in detail prior to the generation of the termination letter, yet not listed as a cause for termination on the termination letter itself. Within and throughout a recorded over the phone hearing with IDES to establish unemployment benefits for the plaintiff, the defendant continued to avoid addressing the formal charge for dismissal in favor of highlighting the falsification of the email. IDES ruled in favor of the plaintiff.

   The plaintiff was treated differently than a non-black colleague: she was screamed and cursed at and at times belittled in front of others; she was not given the same amount of flexibility with reference to dress code, times of arrival at work, excused absences, attempts were made to provoke me; she was given disciplinary action that was outside the normal

## Addendum 2/2

protacol; she was terminated via an unusual unfounded charge - plagiarism of common knowledge information on a rough draft in an email; she was terminated within three months of filing a harassment report against supervisor with human resources; IDES held a hearing regarding the termination charge and found that the contents contained within the draft in question was classified common knowledge; IDES ruled in favor of the plaintiff and issued a judgement deeming "their record adequately sets forth evidence so that no further evidentiary proceedings are necessary" and further states " the evidence presented showed the plaintiff submitted to her supervisor a draft of a document that included information that could be construed as common knowledge" (ABR-09-13617, 2010, pag. 2, para. 4) The plantiff has not been offered her position back and has since been replaced by a non-African American.

09-0601-023

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2009-04129 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Danielle Holt** | **(219) 678-9495** | **09-09-1969** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3838 Carey Street, East Chicago, IN 46312** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **LOYOLA UNIVERSITY** | **500 or More** | **(312) 915-6500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **820 N Michigan Ave, Chicago, IL 60611** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

02-23-2009

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent in or around December 2007. My most recent position was Assessment Coordinator. During my employment I was subjected to harassment. I complained to Respondent about racial harassment. On or about February 23, 2009, I was discharged.

I believe I was discriminated against because of race, Black, and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

APR 21 2009

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 4/21/09 _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Danielle Holt | From: Chicago District Office |
|---|---|
| 3838 Carey Street | 500 West Madison St |
| East Chicago, IN 46312 | Suite 2000 |
| | Chicago, IL 60661 |

**CERTIFIED MAIL 7010 1670 0001 3271 7551**

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Susie Goodwin, | |
| 440-2009-04129 | Investigator Support Asst | (312) 353-4102 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*John P. Rowe*

John P. Rowe,
District Director

9/14/10

(Date Mailed)

Enclosures(s)

cc: **LOYOLA UNIVERSITY**



**LOYOLA**
UNIVERSITY CHICAGO

**Human Resources**
6525 N. Sheridan Rd.,
Chicago, IL 60626
(773) 508-3140

February 25, 2009

Ms. Danielle Holt
3838 Carey Street
East Chicago, IN 57797

Dear Danielle:

This letter serves to confirm the decision made by your department to terminate your
employment as Coordinator, Leaning Technologies & Assessment – Office of the Provost, for
cause; namely, passing off other's work as your own. The effective date of your termination is
Monday, February 23, 2009.

The following is provided for your information:

**Final Pay**
    You will receive your final pay on Friday, March 6th, which will include any unused
vacation hours. This will be paid out in the form of a direct deposit.

**Health, Dental and Vision Insurance**
    Under the terms of Consolidated Omnibus Budget Reconciliation Act (COBRA), you
will have the option of continuing your current benefit coverage for up to a period of
eighteen (18) months at the full unsubsidized premium rate plus a 2% administration fee.
Loyola's outside administrator, Benefit Express, will mail information regarding your
COBRA options, which will include cost and payment instructions, to your home
address. Should you choose not to continue coverage through COBRA, the end date for
your current coverage will be February 28, 2009.

**Life Insurance and AD&D coverage**
    You have been covered under a group term life insurance plan as part of your employee
benefits at Loyola, which ends on your termination date. The group life insurance plan is
portable and may be converted to an individual policy within 31 days from the date of
your termination.

**Long Term Disability Insurance**
    Long term disability (LTD) coverage terminates as of your last day of employment. The
LTD plan does not have a conversion option.

Questions regarding any of the above insurance plans should be directed to the Benefits
Department, Human Resources: 312/915-7514.

**Loyola Retirement Plans**

The University has contributed an amount equal to 8% of your bi-weekly salary to AIG Retirement Valic, which is one of the Defined Contribution Retirement Plans (DCRPs). There are options available to you in dealing with this money at the end of your employment. For information on your account, please contact the Loyola Retirement Center at 773/508-2770, or AIG Retirement Valic at 800/448-2542.

**Other Services**

Recognizing that the loss of a position can be painful, counseling services are available through Perspectives, our Employee Assistance Program, to help you in managing the stress resulting from this loss or from other personal concerns. Please contact Perspectives at 800/456-6327.

Please feel free to contact me directly if you have any questions.

Regretfully,

Joan C. Stasiak
Manager, Human Resource
Loyola University Chicago
773-508-3143
jstasia@luc.edu

cc:    C. Scheidenhelm
        Employment File

March 2, 2009

Thomas Kelly
820 N Michigan Ave
Chicago, IL 60611
(312) 915-7522 WTC
(312) 508-3140 LSC
(312) 915-6826 fax


Dear Mr. Kelly,

This letter is to request an appeal of the decision provided to me on February 26, 2009, which stipulates the reason for termination as "passing someone else's work off as my own". On Monday, February 16, 2009 Carol and I met for our weekly review at which time we briefly discussed the Peer and Self Assessment project. It was communicated to me by Carol that she would have a look at it and get back to me. It was my understanding that Carol, Sarah, Terry, and myself were to work on this document together as a group and that the submitted document was to be considered a working document -- not the final product.

When Carol requested I send her a soft copy, she made no mention of any irregularities in that rough draft. Following her request, an e-mail was sent to Sarah, Terry, and myself indicating that it would be our first project together as a group.

Carol's reference to the screenshots in this e-mail seemed to imply she was unaware that I had previously created screenshots. Because I was simultaneously working on several tasks, I opened the rough draft file, edited the screenshots and copied the contents of the file from the bottom up. A few of the URL's I had visited in an effort to gain an understanding of how the draft document would be best worded were listed at the top of the document. Those URL's were inadvertently left off. Had I been questioned regarding the URL's at this juncture, I would have provided them.

My understanding regarding citing documentation produced by technology departments such as ours with reference to the employment of "common knowledge" is that in the event three/four/five or more sources can be found containing similar information, it is not considered plagiarism. Additionally, it is my understanding that when a multimedia object such as an articulate flash file is created for non-commercial purposes it falls under the guidelines of fair use or educational use.

In the most recent incidence Carol refers to, it is my understanding that the purpose of a rough draft is to identify what could potentially be considered as plagiarism in an effort to have it corrected prior to the submission of a final document. In the first incidence Carol refers to, there was a point where I experienced difficulty with the file. I requested permission from a member of IT staff to view hers so I could troubleshoot mine, thus I inserted both files inside the same blackboard shells our departments sometimes share in an effort to gain a better understanding of the technology. The content of my file was my own original work and different from the other party's. I enjoy creating my own original work and I have never practiced plagiarism nor been

accused of plagiarism. The attached addendum files reflect the contents of my submitted rough draft/soft copy and "common knowledge" examples from various URL's. There was not nor is any effort to plagiarize another's work.

Thank you for your consideration.

Sincerely


Danielle Holt
Coordinator of Assessment, Office of the Provost
Loyola University Chicago

*Verification of similar documentation from other University sites (rough draft/soft copy submissions are highlighted in yellow)*

[black redaction bar]

[black redaction bars]

[black redaction bars]

- [black redaction bars]

  https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment

1. http://aboutblackboard.northwestern.edu/display/cms/Self+Assessment

2. http://irt.austincc.edu/blackboard/downloads/Bb5.pdf

3. *http://www.towson.edu/facultyonline/Documents/Version8/FacSelfPeerAssessment.pdf*

4. *http://www.wilmu.edu/instructionaltech/PDF/Creating_a_Peer_Assessment.pdf*

5. *http://oregonstate.edu/faculty/blackboard/assessment.htm*

6. *http://irt.austincc.edu/blackboard/downloads/Bb5.pdf*

7. *Another good site: http://www.wpi.edu/Academics/ATC/Collaboratory/HowTo/MyWPI/selfandpeerassessment.html*



https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment



1.

http://www.wilmu.edu/instructionaltech/PDF/Creating_a_Peer_Assessment.pdf pg 6

2.

http://tlc.ucalgary.ca/documents/Bb_Assessment.pdf



3.

http://irt.austincc.edu/blackboard/downloads/Bb5.pdf pg 9



4.

http://ecampus.oregonstate.edu/faculty/blackboard/assessment.htm

5.

http://aboutblackboard.northwestern.edu/display/cms/Self+Assessment

6.

http://www2.astate.edu/dotAsset/120632.pdf



https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment

To evaluate other students' Assignments, students should login to Blackboard and navigate to the Self and Peer Assessment Assignment (typically found under Assignments or under another Content Area of your course as designated by your instructor). You will only see work to review during the review period, which begins once the original submission date for an assignment to be evaluated has passed.

1.

http://www.wilmu.edu/instructionaltech/PDF/Evaluating_Peer_Assessment_Submissions.pdf

2.

http://www.wilmu.edu/instructionaltech/PDF/Evaluating_Peer_Assessment_Submissions.pdf



3.   Pg 1                                   pg 2

http://www.southampton.ac.uk/isolutions/computing/elearn/blackboard/student/selfpeer.html

Activity 2: Submitting Assessment as a Student

- On the My Blackboard tab, select the Demo course.
- Click Assignments.
- Provide response to question. Click Submit. When finished, STOP (and wait for instructions)

4.

https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment

➤ When finished with the assessment, click the Submit button one time only, and give Blackboard up to five minutes to complete the submission process. You will receive a confirmation screen when your assessment has been submitted successfully. NOTE: If you do not receive a confirmation screen, contact your instructor immediately.

➤ When taking a Multiple Attempt assessment, you must complete the attempt you are working on during that session. You cannot go back in and complete an attempt if the browser is interrupted before you submit it twice. If your session is interrupted before your submit the assessment, your instructor immediately. Otherwise, you will not receive it twice. Your grade will show as an incomplete point (-).

5.

http://computing.wayne.edu/blackboard/Online_Assess_Guide-Student-March2008.pdf

6.

http://www.saintmarys.edu/~djmandell/Bb-assessment-probs.html



https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment

1.
http://www.wilmu.edu/instructionaltech/PDF/Evaluating_Peer_Assessment_Submissions.pdf

2.  slide 8                                    slide 9                                    slide 10
http://www.southampton.ac.uk/isolutions/computing/elearn/blackboard/student/selfpeer.html

3.

http://www2.astate.edu/dotAsset/120632.pdf

Activity 3: Evaluating Peers as a Student

- When evaluation period is open, click Assignments
- Select your areas
- Provide feedback and score all of the criteria
- Select other user
- Provide feedback and score all of the criteria. When finished, STOP (and wait for instructions)

4.

https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment

5.

The student reviewer is presented with the submission for evaluation as well as the evaluation criteria. They will provide feedback and allocate points based on the instructor defined criteria.

http://www.wpi.edu/Academics/ATC/Collaboratory/HowTo/MyWPI/sp-selfandpeerassessment.html



https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment

Exercise 63. View Peer Assessment Results

1. Log on to your course
2. Click Control Panel
3. Under Course Tools, click Self and Peer Assessment
4. Select the assessment to view
5. Click Submissions and in Evaluations to view all student submissions and evaluations.
6. To view the results, click Results
7. Click Send Results to Grade Center to add the grades to the Grade Center
8. Click OK
9. Click OK to return to the Self and Peer Assessment page
10. Click OK to return to the Control Panel

1.

http://tlc.ucalgary.ca/documents/Bb_Assessment.pdf

Following the Progress of the Self and Peer Assessment

The instructor can follow the progress of the Self and Peer Assessment through each phase of the assignment.

• Go to the Control Panel
• Select Self and Peer Assessment
• Select the correct assignment
• Choose the required phase

In each section, the instructor can view which students have completed that phase of the assignment, as well as view the completed work , when the submission and evaluation periods are both completed, the instructor can send the results to the Grade Center.

2.  Grades for the Self and Peer Assessments are averaged. The instructor may modify the grades if s/he wishes.

http://aboutblackboard.northwestern.edu/display/cms/Self+Assessment

WORKSHOP 8. Blackboard 8 – Peer and Self Assessment

The Self and Peer Assessment tool enables students to review and evaluate work submitted by themselves or their peers. Using criteria specified by the instructor and optional sample responses, students can assign peers and provide feedback on submitted assignments.

• Create a Peer and Self Assessment,
• Set up questions and criteria for peer and/or self evaluation;
• Review assessment submissions, evaluations and results;
3. • Send the results to Grade Center.

http://york.cuny.edu/news/news/blackboard-workshops-for-faculty-staff

Self and Peer Assessment

The Self and Peer Assessment tool provides a way for students to constructively critique their own work and the work of their peers. Instructors are able to track the students' progress, review the assessments, and when the assignment is completed can send the grades to the Grade Center.

4.
http://www.it.northwestern.edu/transitions/2008/cms_v8.htm]

Assessments are based on two phases: the Submission phase in which students respond to the questions or statements, and the Evaluation phase in which students use criteria to evaluate their peer's responses. Reporting tools enable faculty to monitor students' responses and evaluations. Results of self and peer assessments can be sent to the Grade Center for automatic grading. For more information view the [overview and FAQ]

5.
http://www.stthomas.edu/IRT/support/blackboard/new.html

How can I enter self and peer assessment grades in the Grade Center?

Once the submission phase has ended, self and peer assessment results can be transferred to the Grade Center.

• Click on the Control Panel.
• Under "Course Tools" click on "Self and Peer Assessment."
• Click on the name of the assessment and then click Results.
• When finished reviewing results, click on the Send Results to Grade Center button and click OK.

6.
http://cndls.georgetown.edu/blackboard/faculty-tests.html *Towards the bottom of the page*

*Preparing People to Lead Extraordinary Lives*

 **LOYOLA UNIVERSITY CHICAGO**

**Human Resources**
*Water Tower Campus*
820 N. Michigan Avenue
Chicago, Illinois 60611

Telephone: (312) 915-6175
Fax: (312) 915-7612
E-Mail: hr-wtc@luc.edu
Web Site: http://www.luc.edu/hr

March 19, 2009

**By e-mail and regular mail**

Miss Danielle Holt
3838 Carey Street
East Chicago, IN
46312

Ms. Holt:

This letter is in response to your March 2, 2009 letter which requests an appeal of the University's decision to terminate your employment. I have reviewed the records and documentation in your file regarding your termination. They readily detail the ongoing challenges during your Loyola University Chicago employment.

Allow me to succinctly summarize my findings and decision about your last days of employment:

- o On February 19, 2009, you were suspended pending termination because of unprofessional conduct – namely presenting work product as your own that was copied from another source(s). At this meeting you claimed that you could provide "proof" that your supervisor, Ms. Scheidenhelm did not require you to cite sources of work product developed in your office until the final version was submitted.

- o On February 23, 2009 you submitted copies of November, 2008 e-mails documenting that your supervisor, Ms. Scheidenhelm explicitly told you, "As long as the citings are in the final draft that will be fine. It is not necessary to cite the rough draft." Additionally this e-mail explicitly references several websites and sources regarding another work product you were developing – which you seem to offer as an example of how work product you developed was sourced from other web sites or documents.

- o Our investigation into the e-mails and into e-mail servers showed that your "proof" was itself a fabrication and symptomatic of the same unprofessional conduct. The e-mail copies you submitted to us were not the original e-mails sent and stored on e-mail servers and that you in fact edited and added the reference about citing only in final draft and the reference to additional websites.

Your appeal of the decision to terminate is denied. This is an unfortunate end to your Loyola University Chicago employment but it has been brought about by your own acts and omissions.

Sincerely Yours,

Thomas M. Kelly
Vice President for Human Resources

CC:    Personnel File

March 27, 2009


Thomas Kelly
820 N Michigan Ave
Chicago, IL 60611
(312) 915-7522 WTC
(312) 508-3140 LSC
(312) 915-6826 fax


Dear Mr. Kelly,

In response to your latest reply, my understanding of the events is as follows:

- The issue of the e-mail tampering was discussed with Joan Stasiak prior to the generation of the termination letter being sent to me on February 26, 2009.The only reason given for my termination was "passing off someone else's work as my own". As of yet, I have not received your response referencing this issue. Because it was not included within the official termination letter, I offered no explanations or references to it in my letter of appeal. In multiple conversations and correspondences with Joan, I expressed to her that it is possible to overwrite an email on a hard drive and a server. This information too is "Common knowledge" (*Please see attached*).

- Joan's response to me in reference to this issue to me was, IT had confirmed to her that my statements were true, but that it would have taken Carol time to perform the overwrite. At which time Joan inquired of me if I really thought Carol would do something like that. My response to her was yes. Further, I articulated to her that there were several individuals (Ruth Ashton, Marcia Gallegos, Carolyn Kappas) who witnessed Carol at my desk along with other IT personnel on multiple occasions'. Carol has even openly acknowledged via e-mail that she was at my desk on multiple occasions', which I also forwarded to Joan. Further, a request was made by me to have the report of the server findings be forwarded to me. As of yet, I have not received this report.

- Over the past year, I have encountered and reported incidences of being bullied, antagonized, excluded from departmental meetings and "talked down to" verbally and via email. These incidences first began, shortly after I had responded to the comments on my first evaluation-in May of 2008. It is my recollection that Carol was not pleased with my commentary. Following this event is when I first began to encounter these incidences. In October, 2008 I filed a report of bullying with human resources. The office next door to Carol and in front of my cubicle was occupied by Jessica Horowitz and then Caroline Kappas. I am certain that exchanges of communications were overheard in addition to being observed, including the difference in which she treated me as opposed to her other subordinates. This too was reported to Human Resources.

- It is my understanding that Loyola was going through a process of eliminating positions and reducing budgets. Carol made a comment of being frustrated with Loyola politics shortly before filing this recommendation for termination in front of several office floor employees. This information was also communicated to Joan by me prior to the generation of the termination letter. Had I been laid off due to budgetary constraints or not provided with a reason for the dismissal, I would be inclined to be less confused by the decision to terminate.

I respectfully request your reconsideration of this matter.

Sincerely

Danielle Holt

1. Using the Novell script to copy and overwrite files.

http://www.experts-exchange.com/Networking/Novell_Netware/Q_24116436.html



2. . Permanency danger in overwriting a Xen server.

http://docs.xensource.com/XenServer/4.0.1/installation/ch03.html



3. Known email issues in Groupwise.

http://forums.novell.com/



4. Changing the date and timestamp to an earlier date in Groupwise.

http://www.novell.com/support/php/search.do?cmd=displayKC&docType=kc&externalId=10023405&sliceId=&docTypeID=DT_TID_1_1&dialogID=28531233&stateId=0%200%2028527725



5. Free download and description of an overwrite tool.
http://www.brothersoft.com/safe-erase-215391.html



6. Using Recoverability and overwrite attributes
http://www.oreillynet.com/sysadmin/blog/2005/03/please_for_the_love_of_all_tha.html



7. Shredding a hard drive-an overwrite using random numbers
http://www.oreillynet.com/sysadmin/blog/2005/03/please_for_the_love_of_all_tha.html



8. Virus method of overwrite
http://www.viruslist.com/en/find?words=overwriting&page=1

*Preparing People to Lead Extraordinary Lives*



**LOYOLA
UNIVERSITY
CHICAGO**

**Human Resources**
Water Tower Campus
820 N. Michigan Avenue
Chicago, Illinois 60611

Telephone: (312) 915-6175
Fax: (312) 915-7612
E-Mail: hr-wtc@luc.edu
Web Site: http://www.luc.edu/hr

March 19, 2009

**By e-mail and regular mail**

Miss Danielle Holt
3838 Carey Street
East Chicago, IN
46312

Ms. Holt:

This letter is in response to your March 2, 2009 letter which requests an appeal of the University's decision to terminate your employment. I have reviewed the records and documentation in your file regarding your termination. They readily detail the ongoing challenges during your Loyola University Chicago employment.

Allow me to succinctly summarize my findings and decision about your last days of employment:

- o   On February 19, 2009, you were suspended pending termination because of unprofessional conduct – namely presenting work product as your own that was copied from another source(s). At this meeting you claimed that you could provide "proof" that your supervisor, Ms. Scheidenhelm did not require you to cite sources of work product developed in your office until the final version was submitted.

- o   On February 23, 2009 you submitted copies of November, 2008 e-mails documenting that your supervisor, Ms. Scheidenhelm explicitly told you, "As long as the citings are in the final draft that will be fine. It is not necessary to cite the rough draft." Additionally this e-mail explicitly references several websites and sources regarding another work product you were developing – which you seem to offer as an example of how work product you developed was sourced from other web sites or documents.

- o   Our investigation into the e-mails and into e-mail servers showed that your "proof" was itself a fabrication and symptomatic of the same unprofessional conduct. The e-mail copies you submitted to us were not the original e-mails sent and stored on e-mail servers and that you in fact edited and added the reference about citing only in final draft and the reference to additional websites.

Your appeal of the decision to terminate is denied. This is an unfortunate end to your Loyola University Chicago employment but it has been brought about by your own acts and omissions.

Sincerely Yours,

Thomas M. Kelly
Vice President for Human Resources

CC:     Personnel File

March 27, 2009

Thomas Kelly
820 N Michigan Ave
Chicago, IL 60611
(312) 915-7522 WTC
(312) 508-3140 LSC
(312) 915-6826 fax

Dear Mr. Kelly,

In response to your latest reply, my understanding of the events is as follows:

- The issue of the e-mail tampering was discussed with Joan Stasiak prior to the generation of the termination letter being sent to me on February 26, 2009. The only reason given for my termination was "passing off someone else's work as my own". As of yet, I have not received your response referencing this issue. Because it was not included within the official termination letter, I offered no explanations or references to it in my letter of appeal. In multiple conversations and correspondences with Joan, I expressed to her that it is possible to overwrite an email on a hard drive and a server. This information too is "Common knowledge" (*Please see attached*).

- Joan's response to me in reference to this issue to me was, IT had confirmed to her that my statements were true, but that it would have taken Carol time to perform the overwrite. At which time Joan inquired of me if I really thought Carol would do something like that. My response to her was yes. Further, I articulated to her that there were several individuals (Ruth Ashton, Marcia Gallegos, Carolyn Kappas) who witnessed Carol at my desk along with other IT personnel on multiple occasions'. Carol has even openly acknowledged via e-mail that she was at my desk on multiple occasions', which I also forwarded to Joan. Further, a request was made by me to have the report of the server findings be forwarded to me. As of yet, I have not received this report.

- Over the past year, I have encountered and reported incidences of being bullied, antagonized, excluded from departmental meetings and "talked down to" verbally and via email. These incidences first began, shortly after I had responded to the comments on my first evaluation-in May of 2008. It is my recollection that Carol was not pleased with my commentary. Following this event is when I first began to encounter these incidences. In October, 2008 I filed a report of bullying with human resources. The office next door to Carol and in front of my cubicle was occupied by Jessica Horowitz and then Caroline Kappas. I am certain that exchanges of communications were overheard in addition to being observed, including the difference in which she treated me as opposed to her other subordinates. This too was reported to Human Resources.

- It is my understanding that Loyola was going through a process of eliminating positions and reducing budgets. Carol made a comment of being frustrated with Loyola politics shortly before filing this recommendation for termination in front of several office floor employees. This information was also communicated to Joan by me prior to the generation of the termination letter. Had I been laid off due to budgetary constraints or not provided with a reason for the dismissal, I would be inclined to be less confused by the decision to terminate.

I respectfully request your reconsideration of this matter.

Sincerely

*Danielle Holt*
Danielle Holt

1. Using the Novell script to copy and overwrite files.

http://www.experts-exchange.com/Networking/Novell_Netware/Q_24116436.html



2. . Permanency danger in overwriting a Xen server.

http://docs.xensource.com/XenServer/4.0.1/installation/ch03.html

3. Known email issues in Groupwise.

http://forums.novell.com/



4. Changing the date and timestamp to an earlier date in Groupwise.

http://www.novell.com/support/php/search.do?cmd=displayKC&docType=kc&externalId=10023405&sliceId=&docTypeID=DT_TID_1_1&dialogID=28531233&stateId=0%200%2028527725



### 5. Free download and description of an overwrite tool.
http://www.brothersoft.com/safe-erase-215391.html



### 6. Using Recoverability and overwrite attributes
http://www.oreillynet.com/sysadmin/blog/2005/03/please_for_the_love_of_all_tha.html



### 7. Shredding a hard drive-an overwrite using random numbers
http://www.oreillynet.com/sysadmin/blog/2005/03/please_for_the_love_of_all_tha.html



### 8. Virus method of overwrite
http://www.viruslist.com/en/find?words=overwriting&page=1



**LOYOLA**
UNIVERSITY CHICAGO
1870

**Human Resources**
Water Tower Campus
820 N. Michigan Avenue | Chicago, Illinois 60611
Phone 312.915.6175 | Fax 312.915.7612
hr-wtc@luc.edu | www.luc.edu/hr

May 1, 2009

**By e-mail and regular mail**

Ms. Danielle Holt
3838 Carey Street
East Chicago, IN
46312

Dear Ms. Holt:

You wrote me again in April 2, 2009 essentially appealing my decision regarding your appeal of your February 19, 2009 termination. As I said in my March 19, 2009 letter, "Your appeal of the termination is denied."

I hesitated about writing another letter, so as not to send a message that there are issues left unresolved and needing discussion surrounding your termination. There are no such issues.

Allow me to succinctly respond to the other issues in your April 2, 2009 e-mail:

- o Your report of "bullying" in the workplace was reported to Human Resources and was investigated. This was reported to you in the January 12, 2009 report from HR on this matter. The finding from the investigation was there was no evidence of your claim that you were being treated unfairly or subjected to "workplace bullying" in your 2008 performance appraisal.

- o You were terminated for cause. This action was taken because of your unprofessional conduct and was not the result of any cost cutting or budget cuts.

As I've said before, this is an unfortunate end to your Loyola University Chicago employment but it has been brought about by your own acts and omissions.

Yours,

Thomas M. Kelly
Vice President for Human Resources

CC: Personnel File

---------- Forwarded message ----------
From: **Michael Fillmore** <mfillmore@novell.com>
Date: Thu, Feb 26, 2009 at 4:40 PM
Subject: Re: GroupWise links
To: Danielle Holt <dholt.csu@gmail.com>

Mike Fillmore
Tech Specialist for Workgroup
Phone: 801-861-5240
mfillmore@novell.com
or mfillmore@suse.com

>>> Danielle Holt <dholt.csu@gmail.com> 2/26/2009 12:13 PM >>>
Your links are helpful. I am going through it in search of pasages
which support what we spoke about over the phone. Just to clarify what
we spoke about over the phone before I present my points to
administration.

1. The server software is purchased by the organization and installed
onto the server to be monitored and controlled. Novell does not store
the information on a Novell owned server.
*Note: This is true. Novell will provide you with the software, you are responsible
for the correct set-up and installation of it. We have many resources to help you.*

2. Administrators who have administration rights are able to control
and manipulate anything that is on the server. This means that every
email on the server can be tampered with by anyone who has access to
the server.
*Note: Any administrator with the RIGHT access, can gain access to any user's mailbox and/or
postoffice. it is important to make sure you trust the IT administrator you put in charge
of your email server.*

3. Every so often a mass archive occurs. In order to restore an email
it has to have been archived. If it has not been archived onto the
server it can not be restored. If the server has been purged, it can
not be restored. This is internally controlled.
*Note: Novell GroupWise messages can be archived in 2 ways. Total archival of the entire mail system
via back-up software built-in to GroupWise, or third party software, or local archiving in which you can
store a local "archive" of your inbox on your computer/laptop and restore it if you need to at any point. These
back-ups (local ones)
must be done manually by the end-user. Total email server back-ups are done by the administrator(s).*

4. If a retraction occurs before the archive event takes place there
is a possibility that the retraction will not be captured. So it is
possible to retract an email, edit it and only the edited copy will
show up and not both copies. This is internally cntrolled.

*Note: True. Novell GroupWise will do a back-up based on a schedule that the administrator defines. If a retraction and/or edit*
*happens inbetween back-ups (usually weekly or monthly), then it will not be captured. To get "real-time" back-up and email capture,*
*we rely on our third-party partners, like Messaging Architects and GWAVA.*

5. Real time archiving can only ocur in the event a 3rd party (M+
archives ) messaging architect is installed on top of groupwise,
however the potentiality for  capturing events of retractions, e-mail
content edits, date and time stamps is not 100% and subject to
snapshots which are taken at the actual moment the snapshot is taken.
*Note: Using M+Archive is as close to real-time back-up and capture as you can get. But yes, nothing is 100%*
*accurate.*

6. To change the time, date, and content on a previously sent email
the steps are to simply set the time and date on a calendar to a
previous date, construct or edit the contents of the email and resend
the e-mail. This indicates that it is possible to reconstruct an email
inside the groupwise while allowing for the date to appear as if it
had not been changed.
*Note:  The ability to change dates/edit emails can be restricted by the administrator from a management console*
*(Console1)*

6. With the calendar set to a previous date and time stamp than the
actual moment it is created or edited. It is possibe for an e-mail in
Groupwise to appear as though it were sent at a previous date and it
will show up on the server with the previous date.
*Note: The GW server will actually time-stamp EVERY email.  Administrators can track this.*
*Other end-users will not be able to tell if you retract/edit.*

Anything in technology is possible, nothing is absolute. Things can
happen, which is why it is important that we are careful and even then
things can still happen. The above list describes possible scenarios
of things that we need to be cautious of, but groupwise is willing to
assist us with developing a clear understanding of what is and is not
possible and preparing us for that.

On 2/26/09, Danielle Holt <dholt.csu@gmail.com> wrote:
> You are the best! Let me commence to reading. Thank you so much.
>
>
>
> On 2/26/09, Michael Fillmore <mfillmore@novell.com> wrote:
>>
>> administration guide:
>>
http://www.novell.com/documentation/gw8/gw8_admin/index.html?page=/documentation/gw8/gw8_admin/data/a2
zvyc4.html
>>
>> installation guide:

>>
http://www.novell.com/documentation/gw8/gw8_install/index.html?page=/documentation/gw8/gw8_install/data/a20gkue.html
>>
>> E-mail set-up:
>>
http://www.novell.com/documentation/gw8/gw8_userwin/index.html?page=/documentation/gw8/gw8_userwin/data/ab32nt1.html
>> Mike Fillmore
>> Tech Specialist for Workgroup
>> Phone: 801-861-5240
>> mfillmore@novell.com
>> or mfillmore@suse.com

On 2/26/09, Danielle Holt <dholt.csu@gmail.com> wrote:
> You are the best! Let me commence to reading. Thank you so much.
>
>
>
> On 2/26/09, Michael Fillmore <mfillmore@novell.com> wrote:
>>
>> administration guide:
>>
http://www.novell.com/documentation/gw8/gw8_admin/index.html?page=/documentation/gw8/gw8_admin/data/a2zvyc4.html
>>
>> installation guide:
>>
http://www.novell.com/documentation/gw8/gw8_install/index.html?page=/documentation/gw8/gw8_install/data/a20gkue.html
>>
>> E-mail set-up:
>>
http://www.novell.com/documentation/gw8/gw8_userwin/index.html?page=/documentation/gw8/gw8_userwin/data/ab32nt1.html
>> Mike Fillmore
>> Tech Specialist for Workgroup
>> Phone: 801-861-5240
>> mfillmore@novell.com
>> or mfillmore@suse.com

---------- Forwarded message ----------
From: **Michael Fillmore** <mfillmore@novell.com>
Date: Thu, Feb 26, 2009 at 5:01 PM
Subject: Re: link
To: Danielle Holt <dholt.csu@gmail.com>

Yes, aboslutely.  That link shows that you, in fact, can change a time stamp on a GW workstation client.

Mike Fillmore
Tech Specialist for Workgroup
Phone: 801-861-5240
mfillmore@novell.com
or mfillmore@suse.com

>>> Danielle Holt <dholt.csu@gmail.com> 2/26/2009 4:00 PM >>>

http://www.novell.com/support/php/search.do?cmd=displayKC&docType=kc&externalId=10023405&slice
Id=&docTypeID=DT_TID_1_1&dialogID=28531233&stateId=0%200%2028527725

*[handwritten: IT is not manufacturer please see manufacturer notes]*

---------- Forwarded message ----------
From: **Joan Stasiak** <JSTASIA@luc.edu>
Date: Mon, Feb 23, 2009 at 4:14 PM
Subject: Re: This was the email. Fwd: Re: request for Articulate Presentation and edit of contact sheet
To: Danielle Holt <dholt.csu@gmail.com>


Danielle,

I just spoke with ITS.  They have confirmed that Carol could not have edited the email...it was original and not forwarded.   They have also confirmed that Carol could not access your email account without your password to your Groupwise account to edit the original.  If this was the case, the email would have been sent twice and would have a different date/time on it.  ITS is confident that the email provided by Carol is original.

~Joan


>>> Danielle Holt <dholt.csu@gmail.com> 2/23/2009 3:24 PM >>>

I did not edit my emails. these were the copies I sent to myself. I
did not edit them.

On 2/23/09, Joan Stasiak <JSTASIA@luc.edu> wrote:
> Danielle,
>
> I discussed the emails which you provided below with Carol.  She
> printed off the original emails from you which are different from the
> ones below.  Unfortunately, it looks like your emails have been edited
> to include references to citings and urls.   I will be providing you
> with a formal letter regarding your termination which will be efffective
> as of today's date.
>
> Regretfully,
>
> ~Joan
>
> Joan Stasiak
> Manager, Human Resources
> Loyola University Chicago
> 773/508-3143
> jstasia@luc.edu
>
>
>
>>>> Danielle Holt <dholt.csu@gmail.com> 2/23/2009 1:57 PM >>>
> I faxed you a hard copy also. I'm not sure why when I forward things
> to my luc e-mail, it does not show up right away, I tried from my
> yahoo and from this one and neither has shown up yet. But this was the
> e-mail. It was a while ago and I'm sorry I could not readily find it,

> but I try and make sure I keep copies of all of our emails, so its
> like I have thousands and because I was unsure of the subject line. I
> kept looking for self and peer assessment. And I couldnt find it. But
> God is good. here it is.
>
> ---------- Forwarded message ----------
> From: Danielle Holt <don9495@yahoo.com>
> Date: Mon, 23 Feb 2009 11:46:46 -0800 (PST)
> Subject: Fwd: Re: request for Articulate Presentation and edit of
> contact sheet
> To: dholt.csu@gmail.com
>
>
>
> True Change is empowered by three entities...The Creator...The
> Educator...The Legislator
>
> --- On Tue, 11/25/08, Danielle Holt <dholt2@luc.edu> wrote:
>
>
> From: Danielle Holt <dholt2@luc.edu>
> Subject: Fwd: Re: request for Articulate Presentation and edit of
> contact sheet
> To: don9495@yahoo.com
> Date: Tuesday, November 25, 2008, 7:04 PM
>
> Review this.
>
>
>
>
>>>> Carol Scheidenhelm 11/25/2008 10:53 AM >>>
>
> Danielle—I am unable to get any data from the zip file you sent. All
> folders show 0 % content. I have not attempted to zip and email one of
> these yet but will be doing so later in the day. Perhaps I can have
> some insights to share then.
>
> Carol
>
>>>> Danielle Holt 11/25/2008 8:45 AM >>>
>
>
>>>> Carol Scheidenhelm 11/14/2008 3:37 PM >>>
>
> Thanks, Danielle. The PowerPoint you sent is empty; not sure, maybe
> you attached the wrong file. The engage file/intro looks promising. As
> long as the citings are in the final draft that will be fine. It is
> not necessary to cite the rough draft. We can talk more about the file
> next Tuesday before or after or template meeting if you like. John
> just informed me a few minutes ago that my presentation time has been
> cut from 45 minutes to 30, so I will have to shorten my plans. Please
> be certain to raise this issue about the engage file with me on

> Tuesday.
>
> Carol
>
>>>> Danielle Holt 11/14/2008 3:26 PM >>>
>
> Hi Carol, here is my beginnings of the request relevant to the
> Articulate file. I thought I might go into a more precise definition
> of the methods being used, however I have not inserted in the
> definitions or citings as of yet because I may change it, but I will
> make sure to do that once we discuss the final drafts e.g. the
> definition of a portfolio. Once I've done that my plan is to review
> the assessment plans received by our office as an example of how the
> method is being used by the actual departments in the form of a
> summary of the departments' plan.
>
> Also I have found some links for rubrics. This is a realy great one,
> http://rubistar.4teachers.org/index.php?screen=NewRubric&module=Rubistar
>
> . I will send links to you and Sarah for the site. Another one I found
> is off topic but is related to the self and peer assessment,
> https://webapp.utexas.edu/wikis/bbsupport/doku.php/self_peer_assessment
>
> I hope it is ok to use these as a guide. I will check them out this
> evening at home. Please let me know how this sounds to you and whether
> or not you prefer me to do something else. On my way to school.
>
> Thanks
>
>
>
> Dániellè
>

# Verification from Carol herself that she was at my desk and on my computer Fwd: Re: logged in to your machines

**Danielle Holt <dholt.csu@gmail.com>**
To: amy.burkholder@eeoc.gov

**Fri, Nov 6, 2009 at 12:22 PM**

---------- Forwarded message ----------
From: **Danielle Holt** <don9495@yahoo.com>
Date: Thu, Nov 5, 2009 at 5:55 PM
Subject: Fwd: Re: logged in to your machines
To: dholt.csu@gmail.com

True Change is empowered by three entities...The Creator...The Educator...The Legislator

--- On Thu, 2/19/09, Danielle Holt <dholt2@luc.edu> wrote:

From: Danielle Holt <dholt2@luc.edu>
Subject: Fwd: Re: logged in to your machines
To: don9495@yahoo.com
Date: Thursday, February 19, 2009, 2:18 PM

---------- Forwarded message ----------
From: "Danielle Holt" <dholt2@luc.edu>
To: "Joan Stasiak" <JSTASIA@luc.edu>
Date: Thu, 19 Feb 2009 16:13:32 -0600
Subject: Fwd: Re: logged in to your machines

---------- Forwarded message ----------
From: "Danielle Holt" <dholt2@luc.edu>
To: "Carol Scheidenhelm" <Cschei1@luc.edu>,"Terry Moy" <TMOY1@luc.edu>
Date: Tue, 10 Feb 2009 08:54:11 -0600
Subject: Re: logged in to your machines
No Problem Carol. Was everything ok?

Dáñiellè

>>> Carol Scheidenhelm 2/9/2009 6:51 PM >>>
Terry and Danielle--I needed to log in to your computers to check some settings so you will see my login id today.

Carol

--- On **Thu, 11/5/09, Danielle Holt <*don9495@yahoo.com*>** wrote:

From: Danielle Holt <don9495@yahoo.com>
Subject: Fwd: Re: GW archive
To: dholt.csu@gmail.com
Date: Thursday, November 5, 2009, 4:34 PM


True Change is empowered by three entities...The Creator...The Educator...The Legislator

--- On **Fri, 11/14/08, Danielle Holt <*dholt2@luc.edu*>** wrote:

From: Danielle Holt <dholt2@luc.edu>
Subject: Fwd: Re: GW archive
To: don9495@yahoo.com
Date: Friday, November 14, 2008, 11:05 AM


>>> Cory Martin 11/14/2008 12:52 PM >>>
Hello All,

I want to be as clears as I can to what I remember from the original test that me and Danielle
performed. As I remember it I was on the phone with Danielle we where speaking about emails
that she noticed had disappeared from her mail box. Danielle at this time asked me if there was a
way that you can delete emails from someone else mail box that you had sent a message to, my
first response was no I don't think you can do that. So that is when we performed the test, as I
recall it Danielle then sent me an email, I told her over the phone that I had the email and that I
was opening it she performed the retraction and the message did go away.

Now after doing more testing yesterday on the phone with Danielle with numerous email tests,
we could not recreate the result that we got during the first test we performed days before. After
doing some research online, and going over the groupwise manual the result that we got on the
first day of testing was impossible. I do feel now after the second set of testing and the research
that I found, that the result we got after the first test was due to timing, that we may have just
been performing our actions faster than groupwise could refresh. That is the only logical way
that I can see us getting the results that we got. I do not recall that the email we used to test on
the first day was an older email that Danielle had sent me, I also feel that we should have done
more than one test run that day, I feel like that was my fault and it has added to the
confusion about the process of retraction, I do apologize.

Cory M.

>>> Danielle Holt 11/14/2008 11:26 AM >>>
Hi Kathy, quick note. If I am not mistaken the e-mail had been opened a few days before
performing the test as opposed to having been opened just before.

Dáñiellè

>>> Kathy Ryan 11/14/2008 11:21 AM >>>
Cory

Just a thought I had about the testing you did on retracting email. Since the results you and
Danielle saw the other day seem to go against any testing we saw and any documentation we
found, is it possible that if the results you got were not mistakenly interpreted, it may have been a
timing issue. If the retraction occurred at the same time the email was opened, could this have
resulted in the opened email retracting? In a testing environment, sometimes we tend to do things
in quick succession. Thoughts?

Kathy

>>> Carol Scheidenhelm 11/14/08 9:42 AM >>>
Danielle--thanks for the clarification. I was just trying to find some rational explanation to the
situation.

Carol

>>> Danielle Holt 11/14/2008 9:39 AM >>>
No Carol, if this were a case relevant to the archiving process, I am guessing that all of the e-
mails within that period would be gone which they are not. My hypothesis is that either someone
was able to access my e-mail account and deleted them or someone was able to delete it even
though it had been opened.

Also, I would like to reiterate, on the day that Cory and I first attempted to explore the issue I
distinctly recall, my being able to delete an e-mail I had sent him which had been opened with
the two of us being on the phone together as it happened. Perhaps it was a one time incident as
can sometimes be the case with technology, but it did happen. My memory is very good.

Also the e-mails did not disappear in June, they disappeared more recently than that-sometime
around October. In fact I can forward you an e-mail from the month of May or June or July right
now. The e-mails that are missing are only the ones I kept in a particular location. The
disappearance seemed top be very localized and targeted. As I stated, I will investigate this
further, probably during my off time. I am anxious to see what the results will be.

Thank you for the suggestion though

Dáñiellè

>>> Carol Scheidenhelm 11/14/2008 9:18 AM >>>
Danielle--this thought just occurred to me: is it possible that you opened your email on another
computer using the GW client in June (when the archive disappeared?). I don't know how the
original archive was set up (where it was going to), but I recall that others have complained
about email archiving on machines other than their own when using the client on a foreign
machine. Again, I'm not sure this is relevant to the lost archive but thought I'd share it not that it
has crept from the recesses of my memory.

Carol

>>> Danielle Holt 11/14/2008 9:08 AM >>>
Thanks Cory,

I'm also going to do some research on this. As I stated to you on the day we performed the first
test, it was very awkward that it had happened and I distinctly recall that it did happen. I'm sure
there is an answer for this occurrence and when I discover it, I will be sure to share my results
with all.

Best,


Dáñiellè

>>> Cory Martin 11/13/2008 5:22 PM >>>
Hi Danielle,

I found more information on email retraction in groupwise.  I am sending you two links, one is a
link to the groupwise manual, if you go down to section 2.3.2 it gives a clear explanation of the
retraction process.  The other link is to some FAQ about groupwise.

Manual section 2.3.2.: http://www.luc.edu/its/pdfs/gw7_userweb.pdf


Scroll down to the question: **I just sent an email message that I did not want to. Can I retract
it?** http://www.holycross.edu/its/get_help/gs_email/faq_email

Sorry about the unclear info before.

Cory M.

--- On **Wed, 11/12/08, Danielle Holt <*dholt2@luc.edu*>** wrote:

From: Danielle Holt <dholt2@luc.edu>
Subject: Fwd: Re: Request for filing of report of harassment
To: don9495@yahoo.com
Date: Wednesday, November 12, 2008, 1:18 PM

Dáñiellè Holt, MSED
Assessment Coordinator
Office of Learning Technologies & Assessment
Office of the Provost
Loyola University Chicago
Phone: 773.508.7475
Fax: 773.508.3102
Email: dholt2@luc.edu

>>> Danielle Holt 11/12/2008 3:17 PM >>>
Thank you for this information Tom.

Dáñiellè

>>> Thomas Kelly 11/12/2008 2:54 PM >>>
Danielle,

I'll make sure you receive a signed copy of the performance memo you discussed with Joan
Stasiak and Carol on Monday.

Abe will investigate your complaint. In the meantime your supervisor has the right to set work
expectations and you should comply with those expectations.

best...tom.

Thomas M. Kelly
Vice President for Human Resources
Loyola University Chicago
820 North Michigan Ave. - Suite 820
Chicago, IL 60611
312-915-7522
312-915-6826 (fax)
tkelly4@luc.edu

http://www.luc.edu

## Loyola University Chicago
*Preparing People To Lead Extraordinary Lives.*

>>> Danielle Holt 11/12/2008 1:20 PM >>>
Tom, I was not aware that I was currently working on a formal performance improvement plan.
At the end of our meeting, it was mentioned that the document had not been signed by my
supervisor. Nor was I provided with a signed copy. I expressed some concern with the accuracy
of the items listed in the formal improvement document, in addition I also expressed some
concern with the ability to work with Carol in an objective fashion, given that it has consistently
been her word against mine even though I have been able to produce documents which refute
many of her repeated accusations.

I expressed to human resources that it is very intimidating for me to be alone with her. If what
you are saying is that I have no choice of voice in this matter, and that it is expected of me by
Loyola to adhere to the formal performance improvement plan without any means of an
investigation prior to its implementation, without an official copy signed by the supervisor, and
without any submission of a formal rebuttal to be attached-which I had planned to submit once I
received the signed copy, then I can accept that. I was not aware of this expectation, however it
is not my goal to be resistant towards any of Loyola's policies.

Please let me know your wishes and I will comply.

Thanks


Dániellè

>>> Thomas Kelly 11/12/2008 12:56 PM >>>
Danielle,

Thanks for this more lengthy explanation. I am asking Abe Cortes - HR Manager in my office
to investigate your complaint. At a minimum he will have a conversation with you and with
your supervisor to determine the merits of your complaint and any appropriate next steps.

I am now aware that you are currently working on a formal performance improvement plan,
please continue to work on completing objectives and deadlines established under that plan.

thanks...tom.

Thomas M. Kelly
Vice President for Human Resources
Loyola University Chicago
820 North Michigan Ave. - Suite 820
Chicago, IL 60611

312-915-7522
312-915-6826 (fax)
tkelly4@luc.edu

http://www.luc.edu

**Loyola University Chicago**
*Preparing People To Lead Extraordinary Lives.*

>>> Danielle Holt 11/11/2008 4:19 PM >>>
Workplace bullying as it applies to, Performance appraisal, Retaliation, and title VII.

Here is an article which references a couple of the types of offences I am currently experiencing. http://www.luc.edu/umc/newsroom/inthenews/internal/031008_3.pdf . I realize we are only a department of three, but when I review the differences with which me and my coworker Sarah are treated by Carol, it becomes difficult to understand that something of this nature could exist here at Loyola of all places. An example is for the past year I have observed Carol be completely fine with whatever time Sarah comes in and leaves. I come in early, I leave late but I was recently written up for showing up at a conference at noon as opposed to 10 a.m. I even had documentation to demonstrate I had been told by my boss it was not mandatory. When Carol addressed me she screamed at me, stating "I want to know where the hell you were", she has gotten in my face in an intimidating manner, she keeps writing mis-truths about my work and attitude, I am at a loss for what to do. I have repeatedly suggested we need either a neutral objective party from outside the department or a camera in the midst of our meetings.

We had a Blackboard conference and Carol was not interested in having the evaluations tabulated by me as I normally would, its almost as though she no longer wants me to compute any data- which I presumed was one of the primary reasons I am here. My e-mails have disappeared and even though I have back up copies, for Carol to state on a document that I lost them is not an accurate statement. I have tabulated mounds of data accurately, yet Carol has chosen to write me up for leaving two names off a table that she and I were actively in the process of collaborating on. Typically the information placed within the table is supposed to go from the departments to her and then she forwards the information to me, but this past week I have contacted some departments to re-request the information and have been informed by one department that they had discussed their situation with her, but they had a previous copy.

On another occasion here recently, I was copied on an e-mail that said she had reviewed a potential assessment rubric, to which I requested if I could have a copy to place in the file- which she did provide me but I wonder if I had not asked would that information had been provided to me and had it not been provided to me would I be written up for not having included it-when it had not been provided to me to begin with. Some times Carol has given me information, some times she forgets, sometimes I have to ask. Some days I'm afraid to ask. I am at a loss for what to do. I love this position. I value being able to do what I love. Her complaints appear to be the kind one uses when attempting to make an employee look inadequate or inferior. I believe Carol's attacks are personal. Carol recently mentioned me being late to the FOT

convention, I was here in the office making copies of handouts that were needed for the convention.

Oftentimes Carol has written several untruths pertaining to my whereabouts, changed my timecard without even mentioning it to me or discussing it with me.Given me an assignment, commented Sarah would be the better person to which I asked if she would like me to take it off my "to do " list to which Carol responded she had forgotten she had assigned it to me. I respect her Tom, and am willing to do anything she asks, but I get the sense that every time I offer HR an attachment to her comments, it infuriates Carol and she waits. I come in early, I leave late, I make it a point not to refuse her, I have I've tried everything, electronic responses, written responses, not responding, I am careful of my body language, my tone, lest I be reported as being flippant or rash. Here recently I realized, I've become afraid to be alone with her. I have no idea what she is going to say to me, how she's going to tell others I responded to her, I wait and ask her three times how she would like to have something done before I begin, I make 4-5 copies of each file, I keep copies of all the e-mails.

What else can I do Tom, I want to be here in this position at this institution-I'm not interested in being in another department at Loyola. From the time of my first evaluation to which I responded until now, it has only been Carol's word inferring I am less than adequate and my documented tracking and endless screen shots of files and communications to demonstrate otherwise. For whatever reasons, Carol is extremely angry with me and determine to not paint me in the best light whereas once upon a time she raved about my work. Now, not so much. Whatever advice you can give me, I appreciate.

Thanks

Dániellè Holt, MSED


>>> Thomas Kelly 11/11/2008 12:10 PM >>>
Ms. Holt,

What type of harassment are you alleging? I need to know so that I can assign the investigation of your charge in the most effective manner.

Please advise.



Thomas M. Kelly
Vice President for Human Resources
Loyola University Chicago
820 North Michigan Ave. - Suite 820
Chicago, IL 60611
312-915-7522
312-915-6826 (fax)

http://www.luc.edu

## Loyola University Chicago
*Preparing People To Lead Extraordinary Lives.*

>>> Danielle Holt 11/12/2008 1:20 PM >>>
Tom, I was not aware that I was currently working on a formal performance improvement plan.
At the end of our meeting, it was mentioned that the document had not been signed by my
supervisor. Nor was I provided with a signed copy. I expressed some concern with the accuracy
of the items listed in the formal improvement document, in addition I also expressed some
concern with the ability to work with Carol in an objective fashion, given that it has consistently
been her word against mine even though I have been able to produce documents which refute
many of her repeated accusations.

I expressed to human resources that it is very intimidating for me to be alone with her. If what
you are saying is that I have no choice of voice in this matter, and that it is expected of me by
Loyola to adhere to the formal performance improvement plan without any means of an
investigation prior to its implementation, without an official copy signed by the supervisor, and
without any submission of a formal rebuttal to be attached--which I had planned to submit once I
received the signed copy, then I can accept that. I was not aware of this expectation, however it
is not my goal to be resistant towards any of Loyola's policies.

Please let me know your wishes and I will comply.

Thanks



Dániellè

>>> Thomas Kelly 11/12/2008 12:56 PM >>>
Danielle,

Thanks for this more lengthy explanation. I am asking Abe Cortes - HR Manager in my office
to investigate your complaint. At a minimum he will have a conversation with you and with
your supervisor to determine the merits of your complaint and any appropriate next steps.

I am now aware that you are currently working on a formal performance improvement plan,
please continue to work on completing objectives and deadlines established under that plan.

thanks...tom.

Thomas M. Kelly
Vice President for Human Resources
Loyola University Chicago
820 North Michigan Ave. - Suite 820
Chicago, IL 60611

312-915-7522
312-915-6826 (fax)
tkelly4@luc.edu

http://www.luc.edu

**Loyola University Chicago**
*Preparing People To Lead Extraordinary Lives.*

>>> Danielle Holt 11/11/2008 4:19 PM >>>
Workplace bullying as it applies to, Performance appraisal, Retaliation, and title VII.

Here is an article which references a couple of the types of offences I am currently experiencing. http://www.luc.edu/umc/newsroom/inthenews/internal/031008_3.pdf . I realize we are only a department of three, but when I review the differences with which me and my coworker Sarah are treated by Carol, it becomes difficult to understand that something of this nature could exist here at Loyola of all places. An example is for the past year I have observed Carol be completely fine with whatever time Sarah comes in and leaves. I come in early, I leave late but I was recently written up for showing up at a conference at noon as opposed to 10 a.m. I even had documentation to demonstrate I had been told by my boss it was not mandatory. When Carol addressed me she screamed at me, stating "I want to know where the hell you were", she has gotten in my face in an intimidating manner, she keeps writing mis-truths about my work and attitude, I am at a loss for what to do. I have repeatedly suggested we need either a neutral objective party from outside the department or a camera in the midst of our meetings.

We had a Blackboard conference and Carol was not interested in having the evaluations tabulated by me as I normally would, its almost as though she no longer wants me to compute any data- which I presumed was one of the primary reasons I am here. My e-mails have disappeared and even though I have back up copies, for Carol to state on a document that I lost them is not an accurate statement. I have tabulated mounds of data accurately, yet Carol has chosen to write me up for leaving two names off a table that she and I were actively in the process of collaborating on. Typically the information placed within the table is supposed to go from the departments to her and then she forwards the information to me, but this past week I have contacted some departments to re-request the information and have been informed by one department that they had discussed their situation with her, but they had a previous copy.

On another occasion here recently, I was copied on an e-mail that said she had reviewed a potential assessment rubric, to which I requested if I could have a copy to place in the file- which she did provide me but I wonder if I had not asked would that information had been provided to me and had it not been provided to me would I be written up for not having included it-when it had not been provided to me to begin with. Some times Carol has given me information, some times she forgets, sometimes I have to ask. Some days I'm afraid to ask. I am at a loss for what to do. I love this position. I value being able to do what I love. Her complaints appear to be the kind one uses when attempting to make an employee look inadequate or inferior. I believe Carol's attacks are personal. Carol recently mentioned me being late to the FOT

convention, I was here in the office making copies of handouts that were needed for the convention.

Oftentimes Carol has written several untruths pertaining to my whereabouts, changed my timecard without even mentioning it to me or discussing it with me.Given me an assignment, commented Sarah would be the better person to which I asked if she would like me to take it off my "to do " list to which Carol responded she had forgotten she had assigned it to me. I respect her Tom, and am willing to do anything she asks, but I get the sense that every time I offer HR an attachment to her comments, it infuriates Carol and she waits. I come in early, I leave late, I make it a point not to refuse her, I have I've tried everything, electronic responses, written responses, not responding, I am careful of my body language, my tone, lest I be reported as being flippant or rash. Here recently I realized, I've become afraid to be alone with her. I have no idea what she is going to say to me, how she's going to tell others I responded to her, I wait and ask her three times how she would like to have something done before I begin, I make 4-5 copies of each file, I keep copies of all the e-mails.

What else can I do Tom, I want to be here in this position at this institution-I'm not interested in being in another department at Loyola. From the time of my first evaluation to which I responded until now, it has only been Carol's word inferring I am less than adequate and my documented tracking and endless screen shots of files and communications to demonstrate otherwise. For whatever reasons, Carol is extremely angry with me and determine to not paint me in the best light whereas once upon a time she raved about my work.  Now, not so much. Whatever advice you can give me, I appreciate.

Thanks

Dániellè Holt, MSED

>>> Thomas Kelly 11/11/2008 12:10 PM >>>
Ms. Holt,

What type of harassment are you alleging?  I need to know so that I can assign the investigation of your charge in the most effective manner.

Please advise.

Thomas M. Kelly
Vice President for Human Resources
Loyola University Chicago
820 North Michigan Ave. - Suite 820
Chicago, IL  60611
312-915-7522
312-915-6826 (fax)

tkelly4@luc.edu

http://www.luc.edu

**Loyola University Chicago**
*Preparing People To Lead Extraordinary Lives.*

>>> Danielle Holt 11/10/2008 5:22 PM >>>
Hi Professor Kelly,

I would like to file a formal report of harassment against my supervisor Carol Scheidenhelm. I love my job and value my position here in this department. This is my calling. I

Thanks

Dániellè Holt, MSED
Assessment Coordinator
Office of Learning Technologies & Assessment
Office of the Provost
Loyola University Chicago
Phone: 773.508.7475
Fax: 773.508.3102
Email: dholt2@luc.edu

**Disciplinary Report of Conference**

Wednesday, October 15, 2008 10:18 PM
From:

"Joan Stasiak" <jstasia@luc.edu>

To:

"Danielle Holt" <dholt2@luc.edu>

Cc:

"Carol Scheidenhelm" <Cschei1@luc.edu>

-----Inline Attachment Follows-----

Danielle,

First and formost, I again extend my sincere concern regarding your daugher's situation.

Per our meeting of this afternoon and your inquiry as to why you were receiving a written rather than oral warning, policy states that if a pattern of misconduct develops or a serious incident occurs, a Written Report of Conference may be appropriate (refer to policy: http://www.luc.edu/hr/policy_progdiscipline.shtml). As discussed, your supervisor feels that a pattern of behavior is developing which falls short of professional expectations. Also, the manner in which you initially discussed, or refused to discuss, the reason why you were not present for the 10:00 a.m. Blackboard session on October 9th bordered on insubordination. Discussions have been held with you in the past concerning professional expections, including methods of communicating with your supervisor (you, Carol and I participated in this discussion).

Considering the circumstances which were revealed in today's meeting concerning your daughter, you are certainly welcome to grieve this disciplinary action. In doing so, you may want to provide a statement from your daughter's physician to valididate her hosptial stay on October 9th.

I wish your daughter a full and speedy recovery. As mentioned during our discussion, I encourage you to pursue assistance from, Perspectives, our Employee Assistance Program, to help you through this stressful time. Information on Perspectives can be found at: http://www.luc.edu/hr/eap.shtml.

Please let me know if you have any questions or need clarification on the above.

~Joan

Joan Stasiak
Manager, Human Resources
Loyola University Chicago
773/508-3143

*D. Mark Response to disciplinary report*

## 1. **Blackboard Convention**

An e-mail was received which stated attendance was optional. **See attached copy of the email**.

*At the meeting between Joan, Carol, and myself it was indicated that Carol had informed Sara and myself that our attendance at the convention was mandatory; I have no recollection or knowledge of such information being provided to me. I followed the message shown in the email*

*Because the email indicated that attendance was not mandatory, I did not treat it as mandatory. When the initial discussion regarding the Convention was held the following Monday, it was relayed to Carol that my reason for arriving after 10:00 a.m. was due to construction and detours along a route of travel to the conference site. I expressed to her that I had taken a different route than previously planned and along the alternative route there was construction and detours which caused my arrival to be delayed..*

*An exchange of dialogue as to why a particular route was necessary or a phone call had not taken place was neither discussed nor initiated by either party (Carol or myself) in the initial meeting. It was relayed to both Joan and Carol that a phone call to Carol was not made because it was not possible and had it been possible it would have occurred as it has been my pattern since my time of hiring.*

## 2. **FOT Conference**

A review of conference materials prior to the presentation being given took place three times. **See attached copy of the email**.

*At the meeting between Joan, Carol, and myself it was indicated that I had not discussed the content of a presentation prior to presenting the actual; it is my understanding that I had. On three occasions', the contents of this presentation were discussed. The original instructions indicated that I had an option to discuss them with Laurie or Carol. The next discussion involved Carol, Sarah, and myself in a department meeting approximately 2 days before the conference. The final discussion was held the day of the presentation.*

*Following the transition over to the Information Commons, I asked Carol if she would mind reviewing the materials prior to my presenting them. We stood at a table inside the Information Commons near the room where I was to be located and she reviewed them page by page commenting "this looks good". There was a young man there who I believe works in IT and observed this exchange of information. The young man was also volunteering for the conference and was originally stationed at the sign-in table. Once I have completed an assignment from Carol it has been my pattern to submit to her the information for her to review and approve.*

## 3. **Assessment Grid**

Assessment grid placement of the two additional units had not been requested. **See attached copy of the email**.

*At the meeting between Joan, Carol, and myself it was indicated that I had not included two institutions on the assessment grid. The original instructions for this assignment indicated that was to only include the undergraduate units. Recently, Carol indicated to me that John would like to include both undergraduate and graduate information. Our process in this has been that the Units send the original response to her and she forwards that information to me so that I may update the grid and folders on the N drive. Following this step I provide her with an updated copy of the grid for her to review. Additionally, I review the previous folders and also request from her information pertaining to which units should and should not be included.*

*Originally Carol informed me not to include Nursing, Pastoral studies, School of Education, Social Work, School of Medicine, Military Studies, however several of these departments began to send me information which I would; First confer with Carol on what to do with the information. Secondly, incorporate the unit information into the file and grid as she directed me to do so. Thirdly, supply carol with an electronic or printed out copy for her to approve. My pattern of action on this assignment was no different than my pattern on other assignments she has given me.*

4.  **Submission of Conference Information**

Conference information has been provided on IUPUI Assessment Conference and Livetext. **See attached copy of the email**.

*At the meeting between Joan, Carol, and myself it was indicated that I had not provided Carol with information regarding upcoming conventions*

*On two occasions' I have sent Carol electronic information on Assessment conferences. The first was to the IUPUI Assessment conference and the second was to the Livetext conference. I also verbally discussed with her the aforementioned conferences; the AIR conference; the HLC assessment conference; the Blackboard conference, prior to its implementation and an upcoming Educause conference.*

5.  **Passing work off as my own**

Two Articulate Quizmaker files were submitted into our department shared blackboard shell.

*It is my understanding, per my review of the Written warning notification, that I have passed someone else's work off as my own.*

*Two Articulate Quizmaker files were submitted into our department shared blackboard shell, One which I used as a means for investigating the electronic transferring process from a SCORM file into blackboard and one that I created which was my own original work. I do not recall it being discussed with Carol that both files were created by me.*

5.  **My Personal and Professional Activities Outside Loyola**

AQIP and BIE involvement was discussed and information was shared.

*It is my understanding, per my review of the Written warning notification, that it is requested of me that I share elements of my involvement with external organizations and agencies.*

*Much like the Loyola policy which stipulate that my efforts produced regarding Loyola are owned by Loyola and that the information discussed regarding Loyola operations is privileged and confidential, I am required a certain level of confidence and trust by these entities also.. Aside from my desire to operate within an esteemed level of ethical professionalism, these are not affiliations for which I am paid in an exchange for services. My explanation to Carol in the past has been and remains "I provide to them a means for dialogue and collaboration with respect to issues of higher education", outside of my regularly scheduled times of work at Loyola. I believe it best that I keep select components of my work and personal life separate.*

6.  **Verbal Reprimand**

A request for documentation stating prior discussions constitute a verbal warning.

*It is my understanding, per my review of the e-mail sent by HR, that my request was meant to question the process of my receiving a written rather than a verbal warning.*

*My request was to receive a letter from HR stating that our previous discussion constituted a verbal warning. This request is for documentation purposes only.*

**Blackboard meeting before SLATE**

Wednesday, October 8, 2008 11:02 AM
From:

"Carol Scheidenhelm" <Cschei1@luc.edu>

To:

"Christina Bello" <Cbello@luc.edu>, "David Ensminger" <Densmin@luc.edu>, "Danielle Holt"
<dholt2@luc.edu>, "Frederick Barnhart" <fbarnha@luc.edu>, "Jack Corliss" <JCORLIS@luc.edu>,
"Judith Docekal" <JDOCEKA@luc.edu>, "John Orwat" <Jorwat@luc.edu>, "Lauree Garvin"
<LGARVIN@luc.edu>, "Liz Van Kleeck" <Lvankle@luc.edu>, "Michael Boyle" <Mboyle3@luc.edu>,
"Marla Israel" <Misrael@luc.edu>, "Meng-Jia Wu" <Mwu2@luc.edu>, "Ruanda Garth-Mc Cullough"
<RMCCUL1@luc.edu>, "Sarah Brittain" <sbrittain@luc.edu>, tkibane@luc.edu, "Teresa Sosa"
<tsosa@luc.edu>... more

Colleagues--Blackboard has contacted me regarding their interest in meeting with faculty from LUC to
hear what people are thinking about their product. This would be a good opportunity to have some input
into future product development. A Bb rep will be available at 10:00 tomorrow AM in the Gleacher Center,
6th. floor (that is where the conference is being held).

If you are available in the AM and can come early to the conference, please join us. We will probably be
in 608, which is one of the conference rooms. I will be at the registration table by 10:00 and will have
more information at that point. I know this is last minute so do not feel obligated.

Thanks for your interest!

Carol



*Preparing People to Lead Extraordinary Lives*

**LOYOLA
UNIVERSITY
CHICAGO**

## Performance Improvement Document:
## Goal Setting - Performance Management - Performance Feedback
### Dániellé Holt     December 2007-May 2008

**Performance Improvement Purpose:** The performance improvement process at Loyola University Chicago features specific, measurable, results oriented goals and emphasizes some core behaviors. University leaders and supervisors are expected to translate the University's strategic, school-divisional and departmental goals into performance expectations for each employee, modifying those goals as new issues arise or new priorities emerge, monitor progress towards accomplishing expectations and provide regular feedback to an employee on their performance relative to the expectations.   This form is used annually to document the on-going performance improvement process and to initiate the cycle of establishing and managing performance expectations for next year.

1.  Supervisor should begin the process by completing page 2 which provides an opportunity to document the goals and projects during the performance period.  Supervisors have the opportunity to provide performance feedback or rating on each goal and to provide specific comments on employee accomplishments and challenges for each goal. (Please note: If goals or expectations not set in past - please use Page 5 and devote time to developing action plan for future goals - see Instructions below)

2.  Supervisor should also complete page 3 that asks for specific performance feedback or rating on a series of core work behaviors and management qualities.  Where appropriate provide specific examples of behavior or activities that substantiates performance feedback or rating.

3.  Supervisor should complete summary comments considering all the various dimensions of performance and suggest means to close gaps between performance and performance expectations or suggest ways for continued professional growth and performance improvement.

4.  Supervisor should distribute partially completed form to employee, ask employee to complete form (see step #5)  and schedule an appointment to discuss completed performance improvement document.

5.  Employee should review goals section and complete page 3 that asks for employee to assess and rate his/her behavior on a series of core work behaviors and management qualities.  Where appropriate, the employee should provide specific examples of behavior or activities that substantiates self assessment or rating.

6.  Employee should complete summary comments considering all the various dimensions of performance and suggest ways to close gaps between performance and performance expectations or suggest ways for continued professional growth and performance improvement.

7.  Employee and supervisor should meet and work towards a three fold agenda: a) discuss completed performance improvement document, b) make necessary revisions and or updates to document based on the performance discussion,  and c) set future development and work goals (short and long term)

8.  Supervisor should secure employee, supervisor and second level reviewer's signature; make copies for departmental and employee records and forward original to Human Resources for personnel file.

**Instructions for Future Action Plan:** Employees and supervisors should use page 5 to collaboratively set goals, discuss performance expectations and establish employee development plans for next year.  This working document should be the <u>starting point</u> for future goal setting and performance communication throughout the next year.   The supervisor is ultimately responsible for finalizing, modifying and prioritizing the goals and development plans during the on-going performance communications.

| | |
|---|---|
| Dániellé Holt | 117129 |
| **Employee Name:** | **Employee Number:** |
| Assessment Coordinator | Office of Learning Technologies and Assessment |
| **Employee Job Title:** | **Employee's Department:** |
| Carol Scheidenhelm | May 29, 2008 |
| **Supervisor's Name:** | **Date:** |

Dåñiellé Holt
## Goals and Objectives
For Period: December, 2007–May 2008

**Document the established goals and objectives that were established during this time period. A section is provided for supervisors to comment about and provide performance feedback / rating about each goal. The performance feedback or rating should be communicated according to the following scale :**

**1** = Does Not Meet Expectations   **2** = Meets Expectations   **3** = Exceeds Expectations   **N/A**= Not Applicable

| Goals: Briefly describe each goal, stating who, what, when and the parameters of work assigned (hours, costs, etc.) | Weight % | Supervisor Comments | Supv Rating |
|---|---|---|---|
| Record procedures outlined in the assessment plans | 20 | It has been useful to have a record of what units have what filed information. | 3 |
| Assist in planning web content on assessment | 10 | Our staff all need to be more active in creating and planning web content. | 2 |
| With Carol, begin working with faculty who are interested in course and program assessment. | 20 | Meetings have been progressing very well; faculty seem to be pleased with what you have shared. | 2 |
| Compile assessment research | 10 | The materials on the N drive will be good for our web site as well as for general reference. | 3 |
| Establish database or structure for reporting assessment plans from units | 20 | The various ways you have recorded data should provide extremely useful as we move forward and update dept. compliance. | 3 |
| Investigate resources for online or electronic evaluation and assessment programs | 10 | While we are not yet ready for an extensive launch of this type of program, it is useful to have up-to-date information about available programs and software. | 3 |
| Research assessment practices of Core and general programs at other universities | 10 | This is an area that will need more work as we move forward with the Core assessment project. | 2 |
|  | 100% |  |  |

## Behavioral Expectations

**Provide specific performance feedback on core university work behaviors and management qualities. The performance feedback or rating should be communicated according to the following scale :**

**1** = Does Not Meet Expectations   **2** = Meets Expectations   **3** = Exceeds Expectations   **N/A**= Not Applicable

| Core Behaviors / Qualities (all employees) | Comments (Where applicable) | Supv Rating | Empl. Rating |
|---|---|---|---|
| **Loyola Mission/Vision:** Consider effectiveness in articulating and supporting the University Mission and Loyola's Jesuit vision. Consider ways in which work activity and behaviors facilitates achievement of departmental goals that are consistent with the mission/vision. | This is difficult to measure but I have seen nothing to indicate there is a problem with your work conflicting with the Jesuit mission of our office. | 2 | 2 |
| **Interpersonal/Team Effectiveness:** Consider effectiveness in working with and cooperating with internal and external constituencies; promoting teamwork, motivating others, valuing diversity, being service oriented and fostering a positive work climate | Your work with ITS and outside units has been good. I hope to increase the amount of interaction we have as an LTA team. | 2 | 2 |
| **Communication:** Consider ability to communicate goals clearly. Evaluate oral and written communications, listening skills; ability to communicate at all levels of the organization, providing feedback, being accessible, responsive and helpful. | Communication skills are well developed and you are learning how to respond to LUC faculty. | 2 | 2 |
| **Responsiveness to Change:** Consider ability to support and adapt to changes in the work environment. | My concern here is that you often react defensively to suggestions and constructive comments. | 1 | 2 |
| **Responsiveness to Change (II):** Evaluate pro-active, problem-solving approach toward work; commitment to life-long learning by continuously increasing skills knowledge and effectiveness; seeks and initiates creative and innovative solutions and exercises sound, accurate and informed independent judgment when needed. | I separated this part of the question from the first sentence (above) because they are quite different. You exhibit a great desire to learn and move forward and share that knowledge with others. | 3 | 3 |

# COMMENT Section

## Employee's Comments

Provide additional comments about the year's overall performance. Consider all aspects of job performance, including goal accomplishments and work behaviors specified in this document

*For the most part I am in agreement with most parts of the evaluation with the exception of the first category of response to change. While I acknowledge there may have been times when you have observed an exhibition of defensive behaviors in relation to suggestions, challenges or constructive comments that make you think I am resisting the information or arguing against the information being presented to me, it is typically because the suggestions, challenges or constructive comments have appeared to be either condescending, offensive, and hurtful (whether it is conscious or unintended).*

*Please note that these instances have typically been unrelated to the tasks assigned to me in relation to the position for which I was hired and more so to do with incidents that do not fall up under that umbrella. Also note my repeated response to these incidents have been relatively consistent .and in the form of questions as it is always my first inclination to seek clarification as to what is it that is being stated and/or expected of me.*

*Oftentimes your suggestions, challenges or constructive comments are unclear and/or contrary to my perception of why I was hired. Was it because I possessed skills in assessment and happened to be a minority or was it because I was a minority who happened to be skilled in assessment. I come back the next day with a new attitude because I remind myself that irrespective of what has been said or done to me I am still a minority who happens to be skilled in assessment and as long as I remain a minority that is skilled in assessment who chooses to remain employed I will have to face these kinds of instances. None-the-less, it is my intention to make a conscious effort to eliminate all external and observable signs of this behavior.*

*I thank you for your commentary and intent to use it as a tool for growth, as I am also appreciative of the work that is provided by our office and the opportunity to serve as a vessel in fulfillment of its mission.*

## Supervisor's Comments

Provide additional comments about the year's overall performance and enter support for the evaluation below. Consider all aspects of job performance, including goal accomplishment and work behaviors specified in this document.

*In the six months you have been with Loyola and our office, I have been impressed with your knowledge of statistical data and watched you grow in your understanding of the role of this office regarding assisting departments with the charge of assessment. The conferences you have attended have added to your core of knowledge and you have been pro-active in using and sharing that information. The infrastructure you are building for recording and tracking assessment data is especially useful and has already proven to be a benefit for quickly accessing information about the various units.*

*My only real concern is in your response to suggestions, challenges or constructive comments: you tend to exhibit defensive behaviors that make me think you are resisting the information or arguing against it. In most instances, you come back the next day with a new attitude; but this type of reaction (whether it is conscious or unintended) you need to reflect on as it can negatively impact your effectiveness in terms of those you work with.*

*Overall, I feel we are all coming to an appreciation of the work that is needed from our office and you are an important part of that mission.*

*Additional Comment (added after goal-setting session 6-4-08): Danielle did complete her MSED in May 2008, as stipulated in the goals established for her first 3 months of employment.*

Danielle--thanks for taking the time to go over your end-of-the-year evaluation yesterday. I have added the developmental goals and project objectives I suggested and we discussed. Now that you have had some time to think about these areas, I encourage you to add to the goals and projects; this process is not intended to be something your supervisor dictates, but one where we work together toward a common goal. You may have misunderstood this when I scheduled the meeting and stated the need to establish goals for the coming year. I have attached the amended document for your perusal. Per your request, I added that you did complete your MSED according to the deadline listed in the codicil to our Performance Improvement Document of December, 2007.

I continue to be concerned about your remarks in the *Employee's Comments* section of the evaluation and also the comments you shared during our evaluation discussion yesterday. It is not my intent for you to *eliminate all external and observable signs* of your discomfort over being asked to do things *contrary to [your] perception of why [I] was hired.* Instead, I hope you will raise these issues when they occur so we can work them out. You were not able to provide specific examples of being asked to perform duties outside of what you were hired for, so I will have to rely on you to point out these problems as they occur.

It is important to reiterate, however, there will always be extra work and things that fall outside the scope of our primary positions; these are tasks we all perform in order for our unit to function. As your supervisor, it is my obligation to make decisions about work loads and also about professional opportunities that may fall outside the scope of our unit goals. I hope we can work together to establish these priorities.

Additionally, I am concerned about your perception of being treated as a minority--whether you define that minority as race or profession. The comments you wrote on the evaluation and those you shared during part of our interview yesterday, suggested that you were referring to race--and not to the fact that you are a minority because you are an assessment person (as you contended when pressed for examples yesterday). Again, you need to share this information with me at the time of the incident so I can better understand your position. The examples you provided me yesterday were not related to discrimination as much as to my making a decision on conference participation based on the immediate needs of our unit.

During our discussion yesterday, you mentioned that you were now part of the HLC AQIP team. Since you list your affiliation as an instructor at Chicago State, I am puzzled, however. Outside, paid positions (instructor at Chicago State) require approval from your LUC supervisor. Is there compensation involved with the AQIP position? I am confused by your listing your affiliation as you have and need to discuss with you more fully what your obligations to AQIP will entail.

As I have written and stated repeatedly, Danielle, your work on the compilation of information for the reporting units has been very good; your abilities are not in question. It is my hope that we can work together to reduce any workplace discomfort you may feel while still meeting the needs of our office.

I will be in the office tomorrow and would like to get the evaluation copies signed and filed this week, if possible. If that is not enough time for you to review the document and add additional goals, please let me know and we will file them next week.

Carol

>>> Carol Scheidenhelm 2/18/2009 9:49 AM >>>
Danielle--your assumption is correct and the outline of dates you list below is what I am looking for. Thanks for clarifying.

Carol

>>> Danielle Holt 2/18/2009 9:45 AM >>>
Thanks Carol, As we discussed yesterday, my questions regarding the construction of the abstract are: Should the dates be the one they submitted the folder to me in 2008 or should it be the date notated on the file? I believe you stated it should be the one notated on the file itself, which can be confusing to a reader - also I am keeping in mind the grid.  I am almost certain that when departments have submitted something in 2008, they considered what they sent to be satisfactory, up to date and/or most recent, and in compliance with what was requested from our office, but I could be wrong.

I am believing you want something like this with the appropriate summary underneath the heading. If this is not correct, please let me know.

Example:

submitted to our office June 2008
date of plan 2008
date of tool 2004
date of results 2003

Dániellè

>>> Carol Scheidenhelm 2/18/2009 9:30 AM >>>
Thanks, Danielle: I was unsure of the numbers but rely on the totals on the spreadsheet that you have summarized.

yes, the department data is confusing. I think it best, as I stated previously, to take the most recent plan you can find and use that for summary information. There is no need to go back to 2004 plans (unless that is the most recent). I have copied below the information from my Feb. 9 email. I might add to the information to clarify, we need the date of the most recent results as part of that summary (number 3 below). Please let me know if you have further questions about his process of summary information.

If you feel you do not want to begin restructuring the N drive, I will be happy to assist with the process. If this is something that needs to be done together, we can schedule time for that.

>>The summaries of the assessment data from N can proceed even before we finalize the assessment content. You need to record the information from the most recent report, as discussed in our Feb. 3 meeting. The abstracts should include: (1) method of assessment (2) date of plan (3) summary of most recent results (4) any statement of how they are using those results (if available). <<

Carol

>>> Danielle Holt 2/18/2009 9:18 AM >>>
I'm sorry Carol, I believed I handed you a copy. I recall your quoting the amount of people who signed up as 38. But perhaps I am mistaken. Here is an attached copy for your records.
Also, I recall us discussing my taking note of the contents of each folder as I redo the folder system. I mentioned how some of the information was submitted last year but the content was actually from 2004 or 2007. I asked how you would like for me to summarize this, because I am not exactly sure how you would like for that to be summarized.

Then we began to look at the structure and I mentioned that it would probably be ideal for me to review the contents of the folder and just let you know what's in them which is what I was doing in November when you requested I not make any changes-before we got busy and focused on department contact persons and chairs and the Powerpoint, and FOT, etc... So far I have been reading the plans in search of tool, data, and plans because some of them appear to be fused together and/or indistinguishable.

Dáñiellè

>>> Carol Scheidenhelm 2/17/2009 4:54 PM >>>
Danielle--here is a summary of the meeting we had on Monday (from memory, as you did not leave the meeting agenda).

I. Articles: I suggested that the listing we have is sufficient. We will have to check them out and decide which should go onto the website and whether we need any new categories.

II. CLA testing: we agreed to use the same registration/roster as listed on the N drive under Lumina> Spring 2009. As you no doubt noticed, I cleaned up the Lumina folder significantly, sliding files into the provided folders; there were redundant copies of files from 2005 and 2006 that I cleaned up and organized. Much of this structure was inherited but now we have clear folders where files for each testing phase can be placed. Again, only the testing schedule inside the Spring 2009 folder should be considered the authoritative file. I did not delete your other spreadsheet; it is the only file now outside the dated folders.

III. Self and Peer Assessment: I will look over the file you created and provide feedback at our meeting next Monday. Once Sarah and Terry have their chance for comments, then we can, as you suggested, put in screen captures. This seems a logical way to proceed.

>>The summaries of the assessment data from N can proceed even before we finalize the assessment content. You need to record the information from the most recent report, as discussed in our Feb. 3 meeting. The abstracts should include: (1) method of assessment (2) date of plan (3) summary of most recent results (4) any statement of how they are using those results (if available). <<

Carol

>>> Danielle Holt 2/18/2009 9:18 AM >>>
I'm sorry Carol, I believed I handed you a copy. I recall your quoting the amount of people who signed up as 38. But perhaps I am mistaken. Here is an attached copy for your records.
Also, I recall us discussing my taking note of the contents of each folder as I redo the folder system. I mentioned how some of the information was submitted last year but the content was actually from 2004 or 2007. I asked how you would like for me to summarize this, because I am not exactly sure how you would like for that to be summarized.

Then we began to look at the structure and I mentioned that it would probably be ideal for me to review the contents of the folder and just let you know what's in them which is what I was doing in November when you requested I not make any changes-before we got busy and focused on department contact persons and chairs and the Powerpoint, and FOT, etc... So far I have been reading the plans in search of tool, data, and plans because some of them appear to be fused together and/or indistinguishable.

Dáñiellè

>>> Carol Scheidenhelm 2/17/2009 4:54 PM >>>
Danielle--here is a summary of the meeting we had on Monday (from memory, as you did not leave the meeting agenda).

I.  Articles: I suggested that the listing we have is sufficient. We will have to check them out and decide which should go onto the website and whether we need any new categories.

II.  CLA testing: we agreed to use the same registration/roster as listed on the N drive under Lumina> Spring 2009. As you no doubt noticed, I cleaned up the Lumina folder significantly, sliding files into the provided folders; there were redundant copies of files from 2005 and 2006 that I cleaned up and organized. Much of this structure was inherited but now we have clear folders where files for each testing phase can be placed. Again, only the testing schedule inside the Spring 2009 folder should be considered the authoritative file. I did not delete your other spreadsheet; it is the only file now outside the dated folders.

III. Self and Peer Assessment: I will look over the file you created and provide feedback at our meeting next Monday. Once Sarah and Terry have their chance for comments, then we can, as you suggested, put in screen captures. This seems a logical way to proceed.

--- On **Wed, 2/18/09, Danielle Holt <*dholt2@luc.edu*>** wrote:

From: Danielle Holt <dholt2@luc.edu>
Subject: Fwd: Re: Lumina
To: don9495@yahoo.com
Date: Wednesday, February 18, 2009, 1:40 PM

>>> Carol Scheidenhelm 2/13/2009 4:56 PM >>>
Danielle--before I left last evening, I added the names (to date) to the spreadsheet, made several cosmetic changes that would enhance the use, made the redundant sheet and deleted the names of those who had already registered. I needed to do this in order to send the second reminder, which did go out.

When I went into the spreadsheet after the meeting with Sarah and Terry, I found that you had overridden the spreadsheet with the copy you made, effectively wiping out all my enhancements. I requested that you add the updates to the correct spreadsheet but you overwrote it instead.

We are definitely not communicating on this process, Danielle. Please let me know what I can do to help you understand what is needed. I have thought my emails were clear. This testing is too important to allow errors in recording; and students do not want to be contacted about signing up if they are already signed up. On Monday, please check the Not Registered sheet again, as there is at least one name of a registered student that still appears.

Carol

>>> Danielle Holt 2/13/2009 11:03 AM >>>
I figured it might be a good idea to attach and link  the file

N:\Learning Tech and Assessment\Lumina\testing_roster.xls

>>> Danielle Holt 2/13/2009 10:32 AM >>>
Hi Carol,

Apologies for your not being able to view the sheet, I leave it open all day in case someone registers. This way I can insert them quickly. according to my screen shot everyone I sent an e-mail to is on the sheet, and my last insertion was around 11:00 a.m. yesterday.

I take screen shots so I have a visual record of my activity. This is primarily so I can keep track of where I left off, in the event I am working on a different assignment. But would be happy to provide you with a copy if you'd like.

I recall your telling me that when one of us has the sheet open the other can only view it as a read only, but perhaps I am mistaken. It is the last file I close at the end of the day and the first that I open at the beginning of the day.

Also I took great care to insert the sheet as you requested and it has been in place since we last spoke on Monday. The copy that I leave open throughout the day and the one I have been editing is the one that is in the Lumina folder titled "testing roster". Again, apologies if you were only able to view the read-only copy yesterday.

>>> Carol Scheidenhelm 2/12/2009 5:59 PM >>>
Danielle--I requested on Monday that you carefully check the Lumina registrations and keep the spreadsheet on the N drive updated. I also requested that you copy the sheet of participants to another sheet (a redundant copy) and then remove the students from the second sheet who have already registered. This, as I explained, would allow me to simply select all the emails on the "unregistered" sheet and send registration reminders only to those who had not registered as yet. I explained I wanted to send the email on Thursday.

When I got back to my office after a full day of meetings (about 4:15), I noticed that the redundant page had not been created and several (three) students who registered and were sent confirmations were not listed in the spreadsheet we share on the N drive. I have gone ahead and added the students to the spreadsheet on the appropriate dates and also created the redundant sheet so I could send the reminder email today as planned.

I am not sure why you did not complete this request, but am disappointed that the work was not done when we agreed it needed to be completed. Also, I have explained several times the importance of this test and how we can only take 24 at a seating, so the spreadsheet MUST be updated and accurate.

I sent the reminder this evening so we may have requests tomorrow. Please be certain to carefully follow the protocol we have established for this registration.

Carol

--- On Tue, 2/24/09, IT HELPDESK <*HELPDESK@luc.edu*> wrote:

From: IT HELPDESK <HELPDESK@luc.edu>
Subject: Ticket Information
To: angel9495@yahoo.com
Date: Tuesday, February 24, 2009, 6:56 PM

Hello Danielle,

The ticket number for your request 137728. I hope they are able to help you.


Arci


IT HELPDESK
773.508.7190



Danielle Holt <dholt.csu@gmail.com>

# Verification from Carol herself that she was at my desk and on my computer Fwd: Re: logged in to your machines

**Danielle Holt <dholt.csu@gmail.com>**                                    Fri, Nov 6, 2009 at 12:22 PM
To: amy.burkholder@eeoc.gov

---------- Forwarded message ----------
From: **Danielle Holt** <don9495@yahoo.com>
Date: Thu, Nov 5, 2009 at 5:55 PM
Subject: Fwd: Re: logged in to your machines
To: dholt.csu@gmail.com

True Change is empowered by three entities...The Creator...The Educator...The Legislator

— On **Thu, 2/19/09, Danielle Holt** <*dholt2@luc.edu*> wrote:

From: Danielle Holt <dholt2@luc.edu>
Subject: Fwd: Re: logged in to your machines
To: don9495@yahoo.com
Date: Thursday, February 19, 2009, 2:18 PM

---------- Forwarded message ----------
From: "Danielle Holt" <dholt2@luc.edu>
To: "Joan Stasiak" <JSTASIA@luc.edu>
Date: Thu, 19 Feb 2009 16:13:32 -0600
Subject: Fwd: Re: logged in to your machines

---------- Forwarded message ----------
From: "Danielle Holt" <dholt2@luc.edu>
To: "Carol Scheidenhelm" <Cschei1@luc.edu>,"Terry Moy" <TMOY1@luc.edu>
Date: Tue, 10 Feb 2009 08:54:11 -0600
Subject: Re: logged in to your machines
No Problem Carol. Was everything ok?

Dánièllè

>>> Carol Scheidenhelm 2/9/2009 6:51 PM >>>
Terry and Danielle--I needed to log in to your computers to check some settings so you will see my login id today.

Carol